**Allen RODZIEWICZ, Plaintiff,**

**v.**

**Howard BEYER, et al., Defendants.**

**Civ. No. 92–1277 (GEB).**

United States District Court,
D. New Jersey.

Sept. 22, 1992.

Allen Rodziewicz, pro se.

Robert J. Del Tufo, Atty. Gen. of NJ, Daniel A. DiLella, Deputy Atty. Gen., Trenton, NJ, for defendants.

## MEMORANDUM AND ORDER

GARRETT E. BROWN, Jr., District Judge.

Before the Court is defendants' motion for summary judgment. The motion raises the question whether an inmate is preclud-

ed from litigating in federal court constitutional issues that were decided against him by the state court on appeal from a prison disciplinary hearing. For the reasons set forth in this Memorandum and Order, issued without oral argument pursuant to Federal Rule of Civil Procedure 78, the Court concludes that the inmate is precluded from relitigating his claims. Accordingly, the Court will grant the motion.

## BACKGROUND

Plaintiff *pro se* Allen Rodziewicz, currently incarcerated at New Jersey State Prison ("NJSP"), claims that on May 21, 1990, he was found guilty at an NJSP disciplinary hearing of possession of gambling paraphernalia in violation of N.J.Admin.Code tit. 10A, § 4–4.1(a)(603). The disciplinary action was initiated after a strip search revealed betting slips on or near plaintiff's person. Plaintiff received sanctions of 15 days lockup, 60 days administrative segregation, and 60 days loss of commutation time.

In late May 1990, after his administrative appeal[1] was denied, he sought review of the disciplinary finding in the New Jersey Superior Court, Appellate Division, pursuant to N.J.Ct.R. 2:2–3(a)(2).[2] Plaintiff named the New Jersey Department of Corrections ("DOC") as the respondent. He summarized his legal argument in the state court in the following manner:

> Appellant has numerous substantial issues to present on this appeal. All implicate federally required due process guaranteed by the Fourteenth Amendment. They include valid objections to the investigatory process, the failure to afford a timely hearing, the unconstitutional strip search absent a reasonable suspicion, the level of evidence relied on to enter a finding of guilt, and the failure to adhere

1. *See* N.J.Admin.Code tit. 10A, § 4–11.1(a)(1).

2. The rule provides in part that "appeals may be taken to the Appellate Division as of right ... to review final decisions or actions of any state administrative agency or officer," and it permits state prisoners to appeal directly to the Appellate Division from an adverse determination in a prison disciplinary proceeding. *See, e.g., Fisher v. Hundley,* 240 N.J.Super. 156, 572 A.2d 1174

(App.Div.1990); *Negron v. New Jersey Dep't of Corrections,* 220 N.J.Super. 425, 532 A.2d 735 (App.Div.1987); *see also Zeltner v. New Jersey Dep't of Corrections,* 201 N.J.Super. 195, 492 A.2d 1084 (App.Div.), *certif. denied,* 102 N.J. 299, 508 A.2d 186 (1985) (general discussion of relationship between administrative law and prison disciplinary hearings).

to agency regulations in disposing of the administrative appeal.

Brief in Support of Motion for Leave to Proceed *In Forma Pauperis* and for an Emergent Stay 4 (Unnumbered Attachment to Halloran Certif. in Support of Defs.' Motion). On August 7, 1990, the Appellate Division (i) granted plaintiff's motion to proceed *in forma pauperis*, (ii) denied his motion for a stay, (iii) granted DOC's cross-motion for summary disposition of the appeal, and (iv) affirmed the disciplinary order and sanctions. The New Jersey Supreme Court denied plaintiff's petition for certification and dismissed his notice of appeal pursuant to N.J.Ct.R. 2:12–9.

On March 23, 1992, plaintiff filed the present action in this Court pursuant to 42 U.S.C. § 1983 (1988), naming as defendants various individuals connected in some way to the disciplinary proceeding.[3] He sought a judgment declaring that the disciplinary proceedings violated his constitutional rights, an order enjoining random strip searches, compensatory damages for the time he spent in a more restrictive environment as a result of the sanctions, and punitive damages. Defendants now move for summary judgment, raising principles of preclusion.

## DISCUSSION

### A. *Standards for Summary Judgment*

■ Summary judgment may be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is appropriate for the Court to resolve a defense of claim or issue preclusion on motion for summary

judgment, for the issues raised are purely legal in nature. *See Delaware Valley Transplant Program v. Coye*, 722 F.Supp. 1188, 1192 (D.N.J.1989).

### B. *Preclusion Principles*

■ Plaintiff elected, as was his right, to appeal from the prison disciplinary proceeding to the state appellate court. He was not successful. This Court must give to the appellate court's judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was entered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *see* 28 U.S.C. § 1738 (1988).

■ New Jersey courts follow the preclusion principles found in the *Restatement (Second) of Judgments* (1982) (hereafter *"Restatement"*). Under the *Restatement*, "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." *Restatement* § 19; *see, e.g., Culver v. Insurance Co. of N. Am.*, 115 N.J. 451, 460, 559 A.2d 400, 404 (1989) ("Where the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second."). This is the general rule of bar, which, together with the rule of merger, comprises the doctrine of res judicata in the narrow sense, or claim preclusion.[4]

### 1. *Claim Preclusion*

■ For defendants to prevail on grounds of claim preclusion, there must be an earlier valid and final judgment in an action involving "substantially similar or

---

3. Plaintiff named as defendants NJSP Lieutenant Richard Campbell, who, plaintiff claims, ordered that he be strip searched; Senior Corrections Officer Gerald, who searched plaintiff and issued the disciplinary charge after finding the betting slips; NJSP Sergeant Donald Venable, who conducted the prehearing investigation of the charge; Hearing Officer Dennis Zultanski, who conducted the disciplinary hearing; NJSP Deputy Administrator Willis Morton, who denied plaintiff's administrative appeal; and NJSP Administrator Howard Beyer, who had no apparent role in the matter.

4. *See, e.g., Migra*, 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1; *Gregory v. Chehi*, 843 F.2d 111, 115–16 (3d Cir.1988) (en banc); *Jones v. City of Alton*, 757 F.2d 878, 879 n. 1 (7th Cir.1985). The Court will use the term 'claim preclusion' to denote res judicata in the narrow sense. Res judicata in the broad sense encompasses both principles of claim preclusion and principles of issue preclusion (estoppel).

identical causes of action and issues, parties, and relief sought." *Culver*, 115 N.J. at 460, 559 A.2d at 405; *see United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir.1984) (essentially same elements under federal law). There is no doubt that the appellate court's ruling was a valid and final judgment. In determining whether the causes of action are substantially similar, the Court considers

(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions) ...; (2) whether the theory of recovery is the same; (3) whether the witness and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) ...; and (4) whether the material facts alleged are the same.

*Culver*, 115 N.J. at 461–62, 559 A.2d at 405 (quoting *Athlone Indus.*, 746 F.2d at 984) (internal citations omitted).

These factors all weigh heavily in favor of the conclusion that the causes of action are substantially similar, if not identical. The same wrong is complained of, the same material facts are alleged, and the evidence is identical. Indeed, the documents supporting plaintiff's appellate brief are the kind typically dispositive in § 1983 actions challenging disciplinary proceedings, *i.e.*, the DOC form disciplinary report, the form adjudication sheet, the administrative appeal (together with a supporting brief), and the appeal disposition sheet. Plaintiff's theory of recovery also is indistinguishable, for his entire argument on appeal was that his constitutional rights were violated. *See* pages 2–3 above. Therefore, the Court concludes that the appeal and the present action are substantially similar.

■ Plaintiff named DOC as respondent in his appeal. DOC is not a defendant here, but its employees are. The Court is satisfied that there is sufficient identity of parties to support a finding of preclusion. In *Wheeler v. Nieves*, 762 F.Supp. 617

(D.N.J.1991), this Court held that a § 1983 litigant was barred from relitigating issues decided adversely to him in a criminal proceeding. The Court found sufficient privity between the State of New Jersey, the party to the criminal proceeding, and the arresting police officers, the defendants in the § 1983 action. The State prosecuted its action through those officers, with whom it had an identity of functions and interests, therefore the relationship between them was "close enough to include [the officers] within the res judicata." *Id.* at 625 (quoting *E.E.O.C. v. United States Steel Corp.*, 921 F.2d 489, 493 (3d Cir.1990)). Similarly, in this case the DOC employees are close enough to the DOC to invoke the preclusive effect of the earlier judgment.

The final element is whether the relief sought in the two actions is substantially similar. Plaintiff argues that the appellate ruling does not preclude this action because he seeks a form of relief here, money damages, that was not available on the appeal. He relies on the *Restatement*, which provides for an exception to claim preclusion when

[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief[.]

*Restatement* § 26(1)(c). There is authority for plaintiff's position. The Second Circuit has held that a state prisoner is not precluded from pursuing a § 1983 claim by an earlier adverse ruling in a summary proceeding under Article 78 of the New York Civil Practice Law and Rules, principally because a party may not assert a claim for damages in an Article 78 proceeding. *See Davidson v. Capuano*, 792 F.2d 275, 278–80 (2d Cir.1986).[5] One district court out-

5. The *Davidson* panel did not discuss Judge Friendly's ruling that an adverse ruling in an

earlier habeas proceeding may be given preclusive effect in a subsequent § 1983 action, even

side the Second Circuit has reached the same conclusion, albeit with little discussion. *See Bates v. Department of Corrections*, 774 F.Supp. 536, 539 (E.D.Wis.1991).

Another district court has concluded that an inmate may be precluded from relitigating in a § 1983 action matters that were upheld on state appellate review of a disciplinary proceeding, although it is not clear if the court was relying on issue preclusion or on claim preclusion. *See Chambers v. Koehler*, 635 F.Supp. 884, 889 (W.D.Mich. 1984). The most direct analysis of the type of argument made here is found in *James v. Kincheloe*, No. C–88–463–JBH, 1991 WL 243309 (E.D.Wash. Nov. 6, 1991). Plaintiff James first sought state court appellate review of a state prison disciplinary hearing, alleging procedural due process violations. Unsuccessful there, he filed an action under § 1983. He also filed a federal habeas petition, which was dismissed with prejudice.[6] The defendants in the § 1983 action then moved for summary judgment, arguing that the judgment in the habeas proceeding precluded plaintiff in the § 1983 action. James argued, as does plaintiff here, that under § 26(1)(c) of the *Restatement* his claim was not precluded, because the remedies available in the two actions were different. The court rejected this argument, electing instead to construe § 26(1)(c) in the following manner:

> [S]ection 26(1)(c) allows the 1983 action only if the plaintiff prevailed in the habeas corpus action. A plaintiff who has prevailed in the habeas corpus action cannot be awarded monetary damages in that action because damages are not an available remedy. Therefore, ... disallowing a subsequent 1983 action based

on the same cause of action as the habeas petition would be unfair to a plaintiff who has obviously presented a meritorious claim. In that scenario, the plaintiff should be allowed to seek damages.

> On the other hand, ... an unsuccessful habeas petitioner is not faced with the same dilemma. The unavailability of money damages to him is not controlled by statute, but simply because he does not have a meritorious claim. The availability of money damages in a 1983 action (based on the same cause of action as the habeas petition) will not make his claim any more meritorious. Assuming that all of the other requirements have been met, this court can find no inequity in applying res judicata under those circumstances. If the court were to accept plaintiff's argument, res judicata would never apply in a 1983 action even though the identical claim had been litigated in a prior habeas corpus action.

*James*, 1991 WL 243309, *4 (emphasis omitted).

This analysis is compelling. If a plaintiff has asserted an identical claim against identical parties and lost on the merits, why should his ability to relitigate the claim in a different forum turn on the fortuitous circumstance of whether exactly the same remedies were available in the two fora? The origin and purpose of the *Restatement* § 26 exceptions to the general rule of claim preclusion provide guidance for when they should apply. The doctrine of claim preclusion

> is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a

---

though damages are not available in a habeas action. *See Williams v. Ward*, 556 F.2d 1143 (2d Cir.), *cert. dismissed*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977). The *Davidson* reasoning is at odds with Judge Friendly's statement that "[t]he mere fact that the remedy sought in one action is different from that in another does not alone suffice to differentiate the underlying claims." *Id.* at 1154 (citing *Preiser v. Rodriguez*, 411 U.S. [475,] 493–94, 93 S.Ct. 1827, [1838,] [36 L.Ed.2d 439] (1973)); *see also Warren v. McCall*, 709 F.2d 1183, 1185 (7th Cir.1983) (plaintiff precluded from relitigating in § 1983 action claims he litigated in federal

habeas action); *Silverton v. Department of Treasury*, 644 F.2d 1341, 1345–46 (9th Cir.) (plaintiff precluded from relitigating in § 1983 action claim he litigated in state habeas action), *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981).

**6.** *See Preiser*, 411 U.S. at 497, 93 S.Ct. at 1840, 36 L.Ed.2d 439 (preclusion principles not wholly applicable to habeas proceedings). The district court found that plaintiff had failed to raise his claims in his earlier appeals to the state court, and thus had procedurally defaulted.

litigant's presenting to a court in one action the entire claim including any theory of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first. *Restatement* § 26 comment c. As an example of such "formal barriers" which might prevent a plaintiff from asserting a certain theory of recovery or demand for relief, the *Restatement* discusses the now archaic distinction between actions at law and at equity. So, for example, a party was permitted to proceed at equity for reformation of a contract, even though the same party lost at law in action to collect money damages on the contract. *See, e.g., Knight v. Electric Household Utilities Corp.*, 134 N.J. Eq. 542, 36 A.2d 201 (E. & A. N.J.1944).[7] The other formal barrier noted by the *Restatement* has less to do with the availability of remedies than with fundamental limitations on the first court's jurisdiction. For example, a party is permitted to assert a federal antitrust claim in federal court, even though he earlier lost in state court on a state antitrust law claim arising out of the same transaction, because state courts do not have jurisdiction to entertain the federal claim. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 382, 105 S.Ct. 1327, 1333, 84 L.Ed.2d 274 (1985). With the distinction between law and equity long-since abandoned in New Jersey, it is the existence of this type of formal barrier to a court's power to hear the claim, rather than to its power to fashion a specific remedy, that justifies application of the

§ 26(c)(1) exception. *See Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 412–14, 591 A.2d 592, 599–600 (1991) (referring to § 26(1)(c) as the "subject matter jurisdiction exception"); *Restatement* § 25 comment e (referring to § 26(c)(1) as concerned with theories and grounds of action, not with relief). Because the New Jersey appellate court had the power to rule on plaintiff's claims, there is no reason to invoke § 26(c)(1) merely because damages are not available on appeal.[8]

There may be instances, even absent a distinction between law and equity, where the unavailability of money damages in the first proceeding would be significant. For example, a successful habeas petitioner should not be precluded from seeking money damages in a subsequent action under § 1983 on the theory that he failed to seek them in his habeas action. As the *James* court points out, fairness requires permitting the plaintiff to proceed with a claim for damages in the second forum.[9] The rationale is different when the party's failure to recover damages in the first forum is independent of their availability. That is, plaintiff would not have recovered damages in the first forum even if they had been available, because he *lost on the merits* of his claim. To permit a second action asserting the identical cause of action but seeking additional remedies subverts "judicial economy, predictability, and freedom from harassment"—all goals of preclusion doctrine. *Gregory*, 843 F.2d at 116. In light of another stated purpose of the doctrine—"to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand," *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir.1985)—the *James* court's

---

**7.** It is apparent that the drafters of the *Restatement* had in mind the special considerations arising from the distinction between law and equity when they referred in § 26 to the unavailability of certain remedies. *See, e.g., Restatement* § 25 comment f.

**8.** The weakness of plaintiff's argument is also made apparent by considering the typical case where a party may seek damages at the trial level. Suppose a party loses at trial, appeals,

and loses again. One could argue that he is not precluded by the judgment at trial, because it is not final. But plaintiff would argue that the party is not precluded by the judgment on appeal, either, because damages were not available.

**9.** Indeed, the plaintiff in such a case could raise a preclusion argument against the defendant. *See Restatement* § 18.

application of *Restatement* § 26(1)(c) has much to offer.

The issue here, however, is whether New Jersey courts would give preclusive effect to the appellate ruling, and cases applying New York or Wisconsin law are no more or less controlling than those applying Michigan or Washington law. *See McNasby v. Crown Cork & Seal Co.*, 888 F.2d 270, 278 (3d Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990). Third Circuit precedent suggests that defendants are entitled to assert a defense of claim preclusion, but those cases applied Pennsylvania law. *See Gregory*, 843 F.2d at 118–19 ("It is not significant that the relief obtainable in the two forums varies to some degree."); *Davis v. United States Steel Supply*, 688 F.2d 166, 171–74 (3d Cir.1982) (en banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).[10]

This Court has borrowed the Second Circuit's *Davidson* reasoning and applied *Restatement* § 26(1)(c) in a factually dissimilar case decided under New Jersey preclusion law. In *Delaware Valley Transplant Program*, the Court held that claim preclusion did not apply where a plaintiff, after filing an action in federal court, was forced to proceed in a related state court action on certain claims,[11] and the state court ruled adversely on those claims. This Court held that, given the nature of the state court forum, the plaintiff never had an opportunity to present its federal constitutional claims in the state court, and therefore the § 26(c)(1) exception to the general rule against claim-splitting supported a finding of no preclusion. *See Delaware Valley Transplant Program*, 722 F.Supp. at 1194–96. However, the reasoning of that case is inapplicable where, as here, where plaintiff had, and exercised, an opportunity to assert his federal constitutional claims in the state forum.

■ In short, New Jersey case law does not dictate a particular result, and the Court therefore must predict how the New Jersey Supreme Court would decide the issue if presented with it. In light of the foregoing discussion, particularly the reasoning of the *James* case, the Court concludes that the New Jersey courts would reject plaintiff's argument that the mere difference in relief sought permits him to relitigate his cause of action, and would instead rule that the critical issue is whether the first court had subject matter jurisdiction to rule on the merits of the claim and did so rule. Because the disposition of plaintiff's appeal is an earlier valid and final judgement in an action involving substantially similar causes of action, parties, and relief, the Court will grant defendants' motion for summary judgment.

## 2. *Issue Preclusion*

■ Even if defendants were not entitled to summary judgment on a theory of claim preclusion, they would be so entitled on an alternative theory of issue preclusion. *Cf. Marrese*, 470 U.S. at 380–81, 105 S.Ct. at 1332, 84 L.Ed.2d 274 (even if claim is within exclusive jurisdiction of federal courts and thus § 26(1)(c) applies, it still may be given issue preclusive effect); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070–74 (3d Cir.1990) (claim preclusion did not bar plaintiff's claims, but issue preclusion did). "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement* § 27; *see, e.g., Jalil v. Avdel Corp.*, 873 F.2d 701,

10. In a third case applying Pennsylvania law, the Third Circuit distinguished *Gregory* and *Davis* and held that the claims were not precluded because the plaintiff never had an opportunity in the state court to have her federal claims heard. *See McNasby*, 888 F.2d at 278, Here, by contrast, all plaintiff asserted in the state appellate court were his federal claims.

11. The plaintiff was forced to file a related action in state court because the federal court lacked jurisdiction under the Eleventh Amendment to hear an action seeking injunctive relief against a state official on the basis of state law. The plaintiff lost on the merits in state court, and the defendants in the federal action moved for summary judgment, arguing that the federal claims were precluded.

704 (3d Cir.1989) (citing *Colucci v. Thomas Nicol Asphalt Co.*, 194 N.J.Super. 510, 515, 477 A.2d 403, 406 ([App.Div.] 1984)), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

Although defendants did not in their moving papers rely on issue preclusion as such, plaintiff in opposing the motion addressed the only element of the doctrine that is significant here: whether he was afforded a full and fair opportunity to litigate the issues he now raises. *See Peduto v. City of N. Wildwood*, 878 F.2d 725, 728 (3d Cir.1989).[12] Plaintiff argues that issue preclusion should not apply because he was not afforded such an opportunity. In support of this conclusion, he stresses that he merely sought review of an administrative determination in state court, as opposed to instituting an action there. He quotes a recent opinion where this Court noted that

> In New Jersey, courts have a limited role in reviewing agency decisions.... An appellate court will not reverse the decision of an administrative agency unless it is arbitrary, unreasonable, capricious, lacks fair support in the evidence, or violates legislative policies.... The Appellate Division has jurisdiction only to review the agency decision and cannot entertain new claims for the first time on appeal.

*Delaware Valley Transplant Program*, 722 F.Supp. at 1195 (citations omitted). As explained above, however, that case presented the "relatively unique procedural posture" of a plaintiff that filed an action in federal court, but was required by the Eleventh Amendment to institute a later, related, action in the Appellate Division to obtain review of an administrative determination. *See id.* at 1191 n. 5, 1193, 1196 n. 11. Thus, it was entirely consistent with other cases holding that when a party files an action in federal court but then is forced to proceed in state court he is not bound by state court decisions that failed to address his federal claims. *See, e.g., Ivy Club v. Edwards*, 943 F.2d 270, 280–84 (3d Cir. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992).

■ Here, by contrast, plaintiff was not forced to appeal to the state court, and his federal claims were addressed. It was only after any an adverse ruling in that forum that he filed his federal action. Moreover, while it may be true that the Appellate Division did not exercise *de novo* review over the claims, the Supreme Court has held that state court review of an administrative determination may be given preclusive effect in subsequent federal actions. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479–85, 102 S.Ct. 1883, 1896–99, 72 L.Ed.2d 262 (1982); *see also University of Tennessee v. Elliott*, 478 U.S. 788, 796–99, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986) (suggesting that even unreviewed administrative determinations may have preclusive effect in subsequent § 1983 actions).[13] Under New Jersey law, judicial review, even if limited, of a nonjudicial body's action also is given preclusive effect. *See Zoneraich v. Overlook Hospital*, 212 N.J.Super. 83, 90–92, 514 A.2d 53, 56–58 (App.Div.), *certif. denied*, 107 N.J. 32, 526 A.2d 126 (1986). Moreover, other courts have concluded that it is appropriate to give issue preclusive effect to state appellate review of disciplinary proceedings.

*Melikian v. Corradetti*, 791 F.2d 274, 277 (3d Cir.1986).

---

**12.** This is the only significant issue because the other three elements of issue preclusion—(1) a valid judgment and substantial identity of (2) issues and (3) parties—overlap with the elements of claim preclusion and the Court has discussed them above. *See Temple University v. White*, 941 F.2d 201, 212 (3d Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992). To avail themselves of the issue preclusion defense, the defendants need not establish identity of remedies; rather, no matter what relief is sought, issue preclusion prevents "the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom [the doctrine] is asserted."

**13.** The Court does not suggest that the administrative findings at the disciplinary hearing level have preclusive effect. Plaintiff claims that the hearing was constitutionally defective, thus even if the hearing were conducted by a judicial body the findings would not be entitled to preclusive effect. *See Kremer*, 456 U.S. at 482–83, 102 S.Ct. at 1898. Rather, the Court must determine whether the Appellate Division's determination of plaintiff's legal claims precludes him from relitigating them.

*See Gross v. Heikien,* 957 F.2d 531 (8th Cir.1992) (Iowa law), *petition for cert. filed,* July 6, 1992 (No. 92–5135); *McClure v. Santos,* 669 F.Supp. 344 (D.Or.1987), *aff'd,* 878 F.2d 386 (9th Cir.1989).

 It does not of course follow that *"any* state court decision reviewing an administrative action necessarily bars federal suit." *Jones,* 757 F.2d at 886 (emphasis added); *see McNasby,* 888 F.2d at 278 (*"Kremer* merely held that preclusion *can* attach after limited judicial review of administrative proceedings.") (emphasis in original). The touchstone in every case is whether the reviewing court necessarily addressed those questions which were dispositive of plaintiff's claim. *Compare Jalil,* 873 F.2d at 705–06 (state court review of arbitrator's decision not given preclusive effect) *with Rider v. Pennsylvania,* 850 F.2d 982, 991 (3d Cir.), *cert. denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988) (state court review of arbitrator's decision given preclusive effect). Plaintiff's complaint raises no claim that the appellate review procedures he invoked under state law are constitutionally infirm,[14] and the Court has "little doubt that [he] received all the process that was constitutionally required" in disposing of the appeal. *Kremer,* 456 U.S. at 483, 102 S.Ct. at 1898. Therefore, the Court concludes that the claims he now raises are barred by issue preclusion and that defendants are entitled to summary judgment.

CONCLUSION

There may be instances where an inmate has both state and federal claims arising out of a prison disciplinary proceeding, and he desires to litigate his state law claims in state court and preserve his federal claims for federal adjudication. He may do so and avoid application of claim preclusion, though perhaps not of issue preclusion.

14. In fact, plaintiff's complaint made no mention of the prior Appellate Division decision. He suggested in his briefs before the New Jersey Supreme Court that it was somehow inappropriate for the appellate court to dispose of his appeal summarily without opinion. This argument would prove too much, for it would require the appellate court to address fully every

*See Ivy Club,* 943 F.2d at 281–84; *Bradley,* 913 F.2d at 1070–74. In instances such as this one, though, where a plaintiff has but one cause of action which he brings before the state appellate court, he may not later disclaim the finding of the state court and relitigate the cause of action here. *See Gregory,* 843 F.2d at 120.

For the foregoing reasons,

It is this 22nd day of September, 1992,

ORDERED that defendants' motion for summary judgment be and is hereby GRANTED.

theory put forth on appeal, no matter how meritless, before the decision would have preclusive effect. There is no requirement that the state appellate court issue an opinion disposing of the issues. *See McClure,* 669 F.Supp. at 344 (state appellate court affirmed without opinion prison disciplinary sanction).